In re Dannye Lavon PIERCE.

Martha PIERCE, Plaintiff,

v.

Dannye Lavon PIERCE, Defendant.

Bankruptcy No. 91–30231S.
Adv. No. 91–3015.

United States Bankruptcy Court,
E.D. Arkansas,
Jonesboro Division.

May 19, 1992.

James Lyons, Jonesboro, Ark., for plaintiff.

Dennis Zolper, Jonesboro, Ark., for defendant.

## MEMORANDUM OPINION

MARY D. SCOTT, Bankruptcy Judge.

This matter, initiated by a complaint to determine dischargeability pursuant to Bankruptcy Code section 523(a)(5), came before the Court for trial on April 16, 1992. Jim Lyons appeared for the plaintiff and Dennis Zolper and Warren Dupwe appeared for the debtor defendant. The factual issue for determination is whether certain payments due to the plaintiff are in the nature of support or represent a property settlement.

The debtor contends that certain obligations contained in a property settlement agreement entered into between the parties are dischargeable in this proceeding. Mrs. Pierce, the debtor's ex-spouse seeks a determination that (1) the debtor's obligation to pay the home mortgage, insurance and taxes is not dischargeable; and (2) the debtor's obligation to procure and fund a Fifty Thousand Dollars term life insurance policy naming Mrs. Pierce as beneficiary is not dischargeable.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 1334. Moreover, this Court concludes that this is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2) as exemplified by 28 U.S.C. § 157(b)(2)(I).

Dannye and Martha Pierce divorced on November 30, 1987. The property settlement agreement entered into between the parties provided in relevant part:

1. * * * [I]t is agreed that the wife shall have the exclusive use and possession of the home and the home shall not be sold except upon the happening of the following events: the mutual agreement of the parties to sell, the death of the wife; or until such time as the youngest child attains the age of 21 years or no longer lives in the house with the wife, whichever shall first occur.

2. The husband agrees to pay the mortgage indebtedness as it comes due. The mortgage payment includes insurance and taxes on the house. The wife agrees that in the event she remarries and continues to live in the house that she will pay the mortgage indebtedness as it is due, including taxes and insurance. * * *

8. The parties further agree that if the home is sold upon the happening of any of the above enumerated contingencies, the parties shall equally divide the net proceeds from such sale.

9. * * * The children shall be claimed as dependents by the husband for Federal and State Income tax purposes. The wife agrees to execute the necessary IRS form consenting to the husband claiming the children as dependents.

10. [H]usband agrees to pay the total sum of $250.00 per month per child representing support and maintenance for the minor children. * * *

15. The husband agrees to pay to the wife as alimony the sum of $1,500.00 per month.

16. The husband agrees to procure a term life insurance policy in the principal sum of $50,000.00 and agrees to name the wife as sole beneficiary. The husband shall name the wife as owner of the policy and agrees to pay the premium on the policy until the youngest child attains 18 years of age or graduates from high school, whichever should occur last. The wife shall waive all of her interest in the cash surrender value of the husband's current life insurance.

*Pierce v. Pierce*, Case No. E 87–629, Property Settlement Agreement (Nov. 16, 1987).

Under the Bankruptcy Code, debts in the nature of support are not dischargeable in bankruptcy. 11 U.S.C. § 523(a)(5). *See Williams v. Williams (In re Williams)*, 703 F.2d 1055, 1056 (8th Cir.1983); *Mencer v. Mencer (In re Mencer)*, 50 B.R. 80, 83 (Bankr.E.D.Ark.1985). In determining whether the obligations are in the nature of support or property settlement, the focus of the inquiry is upon the facts and circumstances at the time of the divorce. The current needs of the parties are not relevant to the determination. *Draper v. Draper*, 790 F.2d 52, 54 & n. 3 (8th Cir.1986). Further, this Court must treat the payments according to their substance and not according to labels that the parties used or that the state court adopted in the decree or later orders. *Williams*, 703 F.2d at 1057 ("[T]he crucial issue is the function the award was intended to serve."); *see also Steen v. Commissioner*, 923 F.2d 603, 606 (8th Cir.1991). It is the intent of the parties at the time of the agreement that is determinative of whether the payments are in the nature of support or are a division of property.

In *Ramey v. Ramey (In re Ramey)*, 59 B.R. 527, 530 (Bankr.E.D.Ark.1986) the Court outlined a nonexclusive list of factors courts may consider in this question:

(1) whether the obligation terminates on the death or remarriage of either spouse;

(2) the characterization of the payment in the decree and the context in which the provisions appear;

(3) whether the payments appear to balance disparate income;

(4) whether the payments are to be made directly to the spouse or to a third party;

(5) whether the obligation is payable in a lump sum or in installments over a period of time;

(6) whether the parties intended to create an obligation of support;

(7) whether an assumption of debt has the effect of providing the support necessary to insure that the daily needs of the former spouse and any children of the marriage are met;

(8) whether an assumption of debt has the effect of providing the support necessary to insure a home for the spouse and minor children.

Each of these factors applied to the facts in this case indicate that the obligations are in the nature of support rather than property settlement. Mr. Pierce does not dispute that the monthly payments of alimony and child support constitute support and are not dischargeable. Mr. Pierce contends (1) that the obligation to pay the home mortgage, insurance and taxes is dischargeable; and (2) that his obligation to procure and fund an insurance policy naming Mrs. Pierce as beneficiary is dischargeable.

At the time of the divorce of the parties, Mrs. Pierce did not work outside the home. Upon divorce she did obtain employment outside the home, but the amount she earned was not sufficient to support herself. At this same time, Mr. Pierce, president of United Federal Savings and Loan, earned approximately $75,000 annually in income. This disparity in income indicates that the payments were intended by the parties as support.

The Court finds that at the time of the agreement, the parties intended the mortgage payments to constitute support. Mrs. Pierce required the house payment in order for herself and her children to have sufficient resources to live. Mrs. Pierce testified that she and the children were to have use of the house, pursuant to paragraph 1 of the agreement, because at that time she and the children needed that support. Indeed, Mr. Pierce stated that he entered into that provision because he "didn't want the kids to have to move out of the house."

It is noteworthy that the obligations of Mr. Pierce would change or terminate upon certain conditions. Once the children left the home, Mr. Pierce would no longer be required to make the mortgage payment. If Mrs. Pierce died or remarried, Mr. Pierce would no longer be required to pay the mortgage. Mrs. Pierce testified that it was contemplated that if she remarried, her new husband could assist in providing the necessary home. In contrast to this provision, upon the happening of any of several conditions, and without regard to who carried the payment obligation, each party was entitled to one-half of the proceeds of the home upon its sale. This juxtaposition of duties and rights establishes that the parties intended the payment obligations as support.

The agreement also provided that Mr. Pierce would maintain a life insurance policy in the amount of $50,000. This policy was to terminate when the youngest child reached the age of eighteen. Mrs. Pierce testified that this provision existed because, in the event of Mr. Pierce's death, she would be required to support the children alone without the benefit of the mortgage payment, alimony, or child support. The insurance was intended to be a substitute in the event of the loss of those support elements.

The periodic nature of the payments and length of time over which they occur also indicate the obligations are support. The mortgage payments are paid in monthly installments over a period of time. The insurance premiums are also periodic and, like the mortgage payments, continue only until such time as the children leave the home or attain their majority. These facts corroborate Mrs. Pierce's assertion that the payments are in the nature of support.

The nature of the payments also indicate that the parties intended to create an obligation of support: the mortgage payments and insurance premiums have the effect of providing support necessary to insure the daily needs of Mrs. Pierce and the children. "Provisions to pay expenditures for the necessities and ordinary staples of everyday life may reflect a support function." *Williams*, 703 F.2d at 1057. Further, the payment of the life insurance premiums has the effect of providing support and ensuring a home for the former spouse and children in the event of the untimely demise of Mr. Pierce. A home and insurance for paying for the home are necessities of life reflecting a support function.

Finally, both parties testified that a major concern of Mr. Pierce at the time of the divorce was the impact of the divorce on his tax status. This is borne out by the

terms of the agreement: he claimed the children as dependents on his tax returns. In addition, Mr. Pierce was permitted to take the interest deduction from the mortgage payments on his tax returns. Finally, while Mr. Pierce's tax returns have not been offered into evidence, the different tax treatments of alimony and property settlement are of note. If the items are in the nature of support, Mr. Pierce would have been entitled to a deduction for those items, which Mrs. Pierce would report as income, on her return. Alternatively, if the items were property settlement, Mr. Pierce would not be entitled to further deductions for the payments. *See generally Coker v. United States,* 456 F.2d 676 (8th Cir.1972). As Mr. Pierce testified that the tax consequences were of paramount import at the time of the divorce, it is not surprising that all of the language of the documents, and the testimony of the parties, indicate that the intent of the parties was to provide support to Mrs. Pierce.[1]

ORDERED that the debt to Martha Pierce is nondischargeable pursuant to 11 U.S.C. § 523(a)(5).

IT IS SO ORDERED.

---

**1.** Further, there were other provisions in the property settlement agreement which divided the property between the parties in roughly equal portions.