**In re David M. McKINNIS, Brandy Lea McKinnis, Debtors.**

**Karissa J. McKinnis, Plaintiff,**

**v.**

**David M. McKinnis, Defendant.**

**Bankruptcy No. 01–49642–293.**

**Adversary No. 01–4375–293.**

United States Bankruptcy Court, E.D. Missouri, Eastern Division.

Dec. 6, 2002.

Robert M. Blackwell, St. Louis, MO, for Plaintiff.

William A. Catlett, St. Louis, MO, for Defendant/Debtor.

E. Rebecca Case, St. Louis, MO, Chapter 7 Trustee.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

Plaintiff, Karissa J. McKinnis, filed the instant adversary complaint seeking a determination that Debtor's assumption of certain marital debts enumerated in the parties' Decree of Dissolution of Marriage ("Decree") and Debtor's obligation to hold Plaintiff harmless concerning those marital debts are non-dischargeable debts under 11 U.S.C. § 523(a)(5)(B) or in the alternative § 523(a)(15). Plaintiff also contends that Debtor's obligation to GTE Mobile is excepted from discharge under § 523(a)(2)(A) because Debtor allegedly surreptitiously utilized her social security number on an application Debtor submitted to GTE Mobile.

The Court finds that the hold harmless obligation contained in the Decree is a debt to a former spouse in the nature of support and maintenance and is therefore non-dischargeable under § 523(a)(5)(B). Debtor's obligation on the underlying marital debt to third party creditors is not a debt "to a spouse, former spouse or child" of Debtor and therefore does not fall within the ambit of § 523(a)(5). Also, the obligation on the underlying marital debt to the third party creditors is not within the scope of § 523(a)(15). Further, Plaintiff failed to produce any evidence that GTE Mobile justifiably relied upon Debtor's alleged improper use of her social security number and therefore failed to prove her case under § 523(a)(2)(A). Therefore, the Court will enter judgment in favor of Plaintiff with respect to Debtor's hold harmless obligation and for Debtor in all other respects.

## JURISDICTION AND VENUE

This Court has jurisdiction over the parties and subject matter of this proceeding under 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I), which the Court may hear and determine. Venue is proper in this District under 28 U.S.C. § 1409(a).

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff adduced the following evidence at trial, which Debtor did not controvert. Plaintiff and Debtor were married in 1994. Plaintiff and Debtor moved to Florida immediately after they wedded. While in Florida, Debtor owned and operated a successful jewelry business. The couple returned to St. Louis in November, 1997, and Plaintiff and Debtor separated soon thereafter. Plaintiff filed for divorce and the Circuit Court of St. Louis County (the "State Court") entered a Decree of Dissolution on June 15, 2000, which terminated the couple's marriage (the "Original Decree"). Under the terms of the Original Decree, Debtor was ordered to pay Plaintiff $1,653 per month for child support for the couple's two minor children, Brianna and Brooke. Also, Debtor was ordered to pay $750 per month in support to Plaintiff in the Original Decree. Further, under the section of the Original Decree denominated "Division of Property and Other Orders," the State Court ordered Debtor

to assume certain marital debts and to hold Plaintiff harmless for those debts.

The State Court entered an amended decree on June 15, 2000 (the "Amended Decree"). Under the terms of the Amended Decree, Plaintiff was given primary physical and legal custody of Brianna and Brooke. Also, the Amended Decree reduces Debtor's requirement to pay Plaintiff child support for Brianna and Brooke to $750 per month and eliminated Debtor's duty to pay Plaintiff support. Further, the Amended Decree, under the section of the decree labeled "Division of Property and Debt," compels Debtor to assume the couple's marital debt as listed on Exhibit C of the Amended Decree (the "Marital Debt") and to hold Plaintiff harmless therefrom. Finally, the State Court stated that the Amended Decree superseded the Original Decree and that the Amended Decree was effective . retroactive to the date of the Original Decree.

Debtor remarried sometime in 1998 or 1999 and he and his new wife filed for relief under Chapter 7 of the United States Bankruptcy Code on August 30, 2001. Plaintiff filed the instant adversary complaint on December 4, 2001. Plaintiff, in her complaint, asserts that Debtor's obligation to assume the Marital Debts and hold her harmless thereon as contained in the Amended Decree is a non-dischargeable debt under § 523(a)(5)(B) or in the alternative under § 523(a)(15). Further, Plaintiff claims that a marital debt owed to GTE Mobil is excepted from discharge under § 523(a)(2)(A) because Debtor allegedly used her social security number without her permission in obtaining services from GTE Mobil.

At trial, Plaintiff's uncontroverted testimony was that the terms of the Amended Decree were the result of a settlement between the parties. Specifically, Plaintiff accepted the reduction in child support and

the elimination of maintenance in exchange for Debtor agreeing to assume the Marital Debts and holding her harmless thereon. Also, at the time the State Court entered the Amended Decree, Plaintiff's income was $1,679 per month while Debtor's income was $2,907 per month. Plaintiff did not adduce evidence at trial.

Because Debtor's obligation to hold Plaintiff harmless as provided in the Amended Decree is a debt to a former spouse in the nature of support and maintenance, the hold harmless obligation is excepted form discharge under § 523(a)(5)(B). Debtor's obligation, however, to third-party creditors on the Marital Debt is not a debt to a "spouse, former spouse or child" under § 523(a)(5) and therefore does not fall within the ambit of the statute. Also, Debtor's obligation to third-party creditors on the Marital Debt does not come within the purview of § 523(a)(15) because it was incurred independent of the divorce proceedings. Finally, because Plaintiff failed to demonstrate any justifiable reliance on Debtor's alleged improper use of her social security number in obtaining services from GTE Mobil, that debt is not excepted from discharge under § 523(a)(2)(A).

## DISCUSSION

### A. Introduction

▇▇▇ Section 523(a) enumerates the types of debt that are excepted from the debtor's general discharge under § 727(a). A creditor asserting that a specific debt comes within the ambit of a subsection of § 523(a) has the burden of proof in establishing the applicability of the subsection by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Also, generally, to effectuate the policy of providing a debtor with a fresh start, courts should construe the statutory exceptions to discharge listed in § 523(a) narrowly.

*Werner v. Hofmann,* 5 F.3d 1170, 1172 (8th Cir.1993). Courts, however, should more liberally construe the exception for support or maintenance owed to a spouse, former spouse or child of the debtor contained in § 523(a)(5). *Holliday v. Kline (In re Kline),* 65 F.3d 749, 750–51 (8th Cir.1995).

*B. The Hold Harmless Provision*

Plaintiff first argues that Debtor's obligation to hold her harmless on the Marital Debt as outlined in the Amended Decree is excepted from discharge under either § 523(a)(5)(B) or in the alternative under § 523(a)(15). The Court finds that the hold harmless obligation is excepted from discharge under § 523(a)(5)(B).

Section 523(a)(5)(B) provides that a discharge under Chapter 7 does not discharge an individual from any debt:

> "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—
>
> > (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support."

Thus, to invoke § 523(a)(5)(B), the creditor must establish by a preponderance of the evidence that the debt: (1) is an obligation to a spouse, former spouse or child of the debtor; (2) is an obligation in the nature of alimony, support, or maintenance; and (3) the obligation arose in or was made in connection with a separation agreement. *Cooper v. Garcia (In re Garcia),* 174 B.R. 529, 531 (Bankr.W.D.Mo.

1994). An obligation contained in a decree to hold a former spouse harmless for marital debts is an obligation to a former spouse under § 523(a)(5). *See Burns v. Burns (In re Burns),* 149 B.R. 578, 582 (Bankr.E.D.Mo.1993). Also, the hold harmless obligation is a debt incurred in connection with a decree. *Id.* Thus, the only issue as to whether the hold harmless obligation contained in the Amended Decree is a non-dischargeable obligation under § 523(a)(5)(B) is whether it is in the nature of alimony, maintenance or support.

It is undisputed here that the Amended Decree was the product of the parties' settlement. For purposes of determining whether an obligation contained in the parties' settlement agreement is in the nature of support or maintenance under § 523(a)(5)(B), the court must focus on what function the parties intended the obligation to serve in reaching the agreement. *Krein v. Krein (In re Krein),* 230 B.R. 379, 385 (Banrk.N.D.Iowa 1999). The court, in ascertaining such intent, must examine the totality of the circumstances existing at the time of the parties' agreement. *Wellner v. Clark (In re Clark),* 207 B.R. 651, 654 (Bankr.E.D.Mo.1997). Further, although the totality of the circumstances test is an inherently fact-specific inquiry, two factors predominate the analysis in determining whether a specific obligation is in the nature of support or maintenance under § 523(a)(5)(B).

First, if there is a significant disparity in the parties' relative financial position at the time of the agreement and in their ability to generate income in the future, the obligation is highly likely to be in the nature of support or maintenance. *See e.g. Holliday v. Kline (In re Kline),* 65 F.3d 749, 751 (8th Cir.1995); *Williams,* 703 F.2d at 1057; *Clark,* 207 B.R. at 654; *Ianke v. Ianke (In re Ianke),* 185 B.R. 297,

301 (Bankr.E.D.Mo.1995). Second, if the evidence indicates that the parties intended that the hold harmless obligation be in lieu of a formal award of child support or maintenance, the obligation is almost certainly in the nature of support or maintenance under § 523(a)(5)(B). *See e.g. Hamblen v. Hamblen (In re Hamblen),* 233 B.R. 430, 435 (Bankr.W.D.Mo.1999); *Krein,* 230 B.R. at 386; *Clark,* 207 B.R. at 654;; *Winders v. Winders (In re Winders),* 60 B.R. 746, 748 (Bankr.N.D.Iowa 1986). The Court finds that the evidence adduced at trial by Plaintiff on these two issues weighs heavily in favor of finding that Debtor's obligation to hold Plaintiff harmless on the Marital Debt is in the nature of support and maintenance.

On the date the State Court entered the Amended Decree, Debtor's income was $2,907 per month while Plaintiff's income was only $1,679 per month. Also, Plaintiff testified that Debtor has prior experience as a successful business owner while Plaintiff's ability to earn income in the future is significantly limited by her lack of a high school diploma. Further, Plaintiff's uncontroverted testimony at trial was that the parties agreed that Debtor would hold Plaintiff harmless for the Marital Debt in exchange for Plaintiff accepting the reduction in monthly support and the elimination of maintenance in the Amended Decree. After reviewing this evidence, the Court finds that the evidence adduced at trial demonstrated that Plaintiff's financial position was substantially weaker than Debtor's position at the time of the entry of the Amended Decree and the parties intended for the hold harmless agreement to be in lieu of support and maintenance.

██ Debtor counters by first arguing that the hold harmless obligation is not in the nature of maintenance or support because the obligation is contained in the portion of the Amended Decree denom-

inated "Division of Property of Debt." However, the determination of whether an obligation contained in a Decree is a division of property or in the nature of support or maintenance is a matter of federal law. *Williams v. Williams (In re Williams),* 703 F.2d 1055, 1056–57 (8th Cir.1983). Thus, bankruptcy courts are not bound by the decree's designation of the debt as either a division of property or a support obligation. *Id.* This is true regardless of whether the decree is the result of litigation or settlement. *Id.; Burns v. Burns (In re Burns),* 149 B.R. 578, 581 (Bankr.E.D.Mo.1993).

██ Debtor also maintains that because not all of the individual marital debts were incurred to obtain essentials, his obligation to hold Plaintiff harmless on the Marital Debt is not in the nature of support or maintenance. It is true that whether the assumed marital debt is for necessities may be a factor in the determination of whether the obligation is in the nature of support or maintenance for purposes of § 523(a)(5)(B). *See Clark,* 207 B.R. at 654–55. However, the mere fact the debt in question may not have been incurred for procuring necessitates does not preclude a finding that the obligation is in the nature of support or maintenance. *Krein,* 230 B.R. at 386. Rather, as discussed above, the more important factors are the relative financial position of the parties at the time of the decree and whether the parties intended for the hold harmless provision to be in lieu of a formal award of support or maintenance. *See Id.*

After reviewing the evidence outlined above and construing § 523(a)(5)(B) liberally to effectuate its salutary purpose of protecting Debtor's former spouse and minor children, the Court finds that Plaintiff has established by a preponderance of the evidence that the hold harmless agreement incorporated in the Amended Decree is the

nature of support and maintenance under § 523(a)(5)(B). Accordingly, Debtor's obligation to hold Plaintiff harmless as provided in the Amended Decree is excepted from discharge. The Court notes that this decision only analyzes whether the hold harmless agreement is a debt excepted from discharge under § 523(a)(5)(B). The scope of Debtor's obligation to Plaintiff under the hold harmless agreement is a matter of state law that is not before the Court. *Krein*, 230 B.R. at 386–87; *Reiff v. Reiff (In re Reiff)*, 166 B.R. 694, 696 (Bankr.W.D.Mo.1994).

### C. Assumption of the Marital Debt

1. *The Assumption of the Marital Debt is outside the Scope of § 523(a)(5).*

■ Plaintiff also argues that Debtor's direct obligation to third party creditors on the Marital Debt is non-dischargeable under § 523(a)(5). The Court rejects Plaintiff's argument because Debtor's obligation on the Marital Debt is not a debt owed to a spouse, former spouse or child for purposes of § 523(a)(5).

This Court has previously addressed the issue and has held that the debtor's direct obligation to third party creditors on the marital debts as well as the concomitant hold harmless obligation is a debt to a spouse, former spouse or child of the debtor under § 523(a)(5). *Burns v. Burns (In re Burns)*, 149 B.R. 578, 581–82 (Bankr. E.D.Mo.1993); *Telgmann v. Maune (In re Maune)*, 133 B.R. 1010, 1014 (Bankr. E.D.Mo.1991); *Barac v. Barac (In re Barac)*, 62 B.R. 713, 717 (Bankr.E.D.Mo. 1985);. However, upon reconsideration of the issue, the Court now finds that the language, legislative history and policy rationale underlying § 523(a)(5) compel a construction of the scope of the statute that does not include the debtor's obligation to pay the marital debt to third party creditors when the debtor is also

obligated to hold his former spouse harmless for those debts.

■ Clearly, certain types of debts owed to third parties can be a debt owed to a spouse, former spouse or child of the debtor for purposes of § 523(a)(5). *Holliday v. Kline (In re Kline)*, 65 F.3d 749, 751 (8th Cir.1995); *Williams v. Williams (In re Williams)*, 703 F.2d 1055, 1057 (8th Cir.1983). However, not all debts in the nature of maintenance or support that is owed by the debtor to a third party creditor fall within the discharge exception of § 523(a)(5) for two reasons.

First, the text of § 523(a)(5) itself limits the exception to debts owed to a "spouse, former spouse or child of the debtor." Accordingly, construing the scope of § 523(a)(5) to include any debt owed to a third party creditor would render the "to a spouse, former spouse or child" language superfluous. Thus, such a construction of the scope of § 523(a)(5) is not tenable. *See Adams v. Apfel*, 149 F.3d 844, 846 (8th Cir.1998) (holding that courts must construe statutes so that each provision is given meaning). Therefore, the text of § 523(a)(5) itself precludes a construction of the statute that would hold that every debt owed to a third party that is in the nature of maintenance or support is nondischargeable under § 523(a)(5). *DeKalb County Div. of Family Serv. v. Platter (In re Platter)*, 140 F.3d 676, 682 (7th Cir. 1998).

Also, an examination of the legislative history of § 523(a)(5) clearly reveals that Congress did not intend for all debts in the nature of support or maintenance owed to a third party to fall within the scope of § 523(a)(5). When analyzing the legislative history of the Bankruptcy Reform Act of 1978 (the "Code"), one must be cognizant of the fact that Congress did not follow its usual procedure of referring the two differing versions of the bill from the

House and the Senate to a conference committee. Rather, the two versions were reconciled by the competing bills' principal sponsor in the House (Rep. Edwards) and Senate (Sen. DeConcini). After Rep. Edwards and Sen. DeConcini reached an agreement on the compromise bill, they issued a statement explaining individual sections of the reconciled bill (the "Joint Statement"). *See* Kenneth N. Klee, *Legislative History of the New Bankrupt Code*, 54 AM. BANKR. L.J. 275, 187–88 (1980).

The Joint Statement recites that a debt owed to third parties is excepted from discharge under § 523(a)(5) provided the debt is in the nature of support or maintenance. 1978 U.S.C.C.A.N. 5693, 6454. Both the House and Senate Judiciary Committee Reports (collectively the "Committee Reports"), however, state that exception contained in § 523(a)(5) only applies to alimony, maintenance or support owed **directly** to spouse, former spouse or child of the debtor. 1978 U.S.C.C.A.N. 5787, 5865. (Emphasis Added). The Court finds the position of the Committee Reports takes precedence over the Joint Statement on the issue of the scope of § 523(a)(5) with respect to debts owed to third parties.

The majority of the appellate courts that have addressed the issue have held that if the individual Committee Reports are in agreement on an issue but the Joint Statement differs on that issue, the Committee Reports take precedence over the Joint Statement. *See e.g. Burns v. United States (In re Burns)*, 887 F.2d 1541, 1549–50 (11th Cir.1989); *Zolg v. Kelly (In re Kelly)*, 841 F.2d 908, 912 n. 3 (9th Cir. 1988); *Rosenow v. Ill. Dept. of Rev. (In re Rosenow)*, 715 F.2d 277, 280 (7th Cir.1983). The rationale for this result is that the Joint Statement is simply the remarks of individual legislators and cannot be attributed to the entire body that voted on the

bill when it is not supported by the Committee Reports or the text of the statute. *Burns*, 887 F.2d at 1541(*quoting Chrysler Corp. v. Brown*, 441 U.S. 281, 311, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979)); *Kelly*, 841 F.2d at 912 n. 3. Also, the Joint Statement is even less authoritative when the respective Committee Reports are in agreement because the purpose of authors of the Joint Statement was to resolve differences between the House and Senate versions of the bill. *Rosenow*, 715 F.2d at 280.

The Second Circuit, in construing whether debts owed to third parties are within the scope of § 523(a)(5), has held that the Joint Statement controls. *Pauley v. Spong (In re Spong)*, 661 F.2d 6, 10 (2d Cir.1981). The *Spong* Court premised its conclusion on its opinion that because the Joint Statement was offered in lieu of a conference committee report, it is entitled to great weight. *Id.* The Second Circuit in a subsequent decision, however, observed that the Joint Statement amounted to "remarks made in floor debate" that did not take precedence over a Senate Committee Report. *DeChiaro v. New York Tax Comm'n. (In re DeChiaro)*, 760 F.2d 432, 436 (2d Cir.1985).

The Court will follow the majority position and examine the Committee Reports, not the Joint Statement, for the legislative history of § 523(a)(5) for two reasons. First, as the Second Circuit itself later noted in *DeChiaro*, the Joint Statement cannot be given the status of a conference report because it is not a statement of the terms agreed to by both houses. Second, because the individual Committee Reports agreed to the scope of the exception to discharge under § 523(a)(5) with respect to debts owed to third party creditors, there was nothing for Senator DeConcini and Representative Edwards to resolve concerning that issue in the Joint Statement. Accordingly, the Court finds that

the Committee Reports contain the legislative history concerning the scope of § 523(a)(5) with respect to debts owed to third party creditors.

As illustrated above, the Eighth Circuit has held that certain debts in the nature of maintenance or support owed directly to a third party creditor may fall within the scope of § 523(a)(5). For example, in *Kline,* the Court held that a debtor's obligation to pay his former spouse's attorney's fees that she incurred during the divorce preceding directly to the attorney is within the exception to discharge contained in § 523(a)(5) because the attorney could have pursued the spouse under a *quantum meriut* theory. *Kline,* 65 F.3d at 751. As illustrated above, however, both the text and the legislative history of § 523(a)(5) clearly limit the instances when debts owed to third-party creditors fall within the statute's exception to discharge. Because the text of the statute itself is ambiguous as to whether a debtor's obligation to pay marital debts to third party creditors is within the purview of § 523(a)(5), the Court will refer to the statute's legislative history in deciding the issue. *See United States v. Garfinkel,* 29 F.3d 451, 456 (8th Cir.1994).

The legislative history clearly indicates that Congress intended § 523(a)(5) to except from discharge only the debtor's obligation to hold a former spouse harmless in a decree, not the underlying obligation to pay the third party creditors directly. Both Committee Reports recite that the limitation contained in § 523(a)(5) that only debts owed to a spouse, former spouse or child of the debtor are excepted from discharge does not take debts resulting from the debtor's obligation to hold a former spouse harmless on joint debts outside the scope of the exception. Under the negative pregnant rule of construction, the Committees' inclusion of the debtor's obli-

gation under the hold harmless provision but not the underlying debt to the third party creditors is indicative of the Committees' intention not to include the latter within the scope of § 523(a)(5).

■ The negative pregnant rule of construction holds that a court may presume that when Congress expressly lists what is within the scope of a particular statute, it intends to exclude from the scope of the statute what is not in the list. *Key Tronic Corp. v. United States,* 511 U.S. 809, 818–19, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994). This rule of construction applies to the analysis of legislative history as well. *Maine v. Thiboutot,* 448 U.S. 1, 10 n. 10, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980).

Here, both Committee Reports recite that the debtor's obligation to hold a former spouse harmless on joint debt is within the scope of the exception from discharge under § 523(a)(5). Thus, the respective committees addressed the issue of the scope of § 523(a)(5) concerning the debtor's obligation with respect to joint marital debt owed to third parties and stated that only the debtor's obligation to hold the former spouse harmless from such debt is within the scope of § 523(a)(5). Given that Congress specifically addressed the scope of § 523(a)(5) with respect to the dischargeability of joint marital debts and only listed the debtor's hold harmless obligation as within the purview of § 523(a)(5), under the pregnant negative rule of construction, the Court finds that Congress intended to exclude the underlying joint marital debt owed to third party creditors from the scope of § 523(a)(5).

It is true that a majority of courts that have addressed this issue have held that both the debtor's obligation on the underlying debt and his obligation on the hold harmless agreement is within the scope of

§ 523(a)(5). These cases have largely followed the Sixth Circuit's opinion of *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103 (6th Cir.1983) in reaching this conclusion. *See e.g. Williams v. Holt (In re Holt)*, 40 B.R. 1009, 1013–14 (S.D.Ga.1984). The Court will not follow the *Calhoun* Court's holding for two reasons.

First, the *Calhoun* Court based its holding on an erroneous conclusion that both Committee Reports were internally contradictory with respect to whether an obligation to third parties fell within the ambit of § 523(a)(5). The *Calhoun* Court noted that because both Committee Reports initially state that § 523(a)(5) only applies to debts owed directly to a spouse, former spouse or child of the debtor but then recites that the debtor's obligation to hold his former spouse harmless on joint marital debts also falls within the discharge exception, they are inconsistent as to whether debts to third parties are within the purview of the statute. *Id.* at 1106. Because the *Calhoun* Court found that the Committee Reports were inconsistent, it examined the Joint Statement to resolve the issue and held that debts owed to third parties fall with the exception contained in § 523(a)(5). *Id.*

Apparently, the Sixth Circuit based its conclusion that the Committee Reports were inconsistent with respect to whether debts owed to third parties falls within the ambit of § 523(a)(5) on a belief the debtor's obligation to holder his former spouse harmless is an obligation to a third party. However, it is well settled law that an indemnitor's obligation to hold the indemnitee harmless from any liability that the indemnitee may suffer with respect to a third party runs to the indemnitee, not the third party. BLACK'S LAW DICTIONARY 773 (7th ed.1999). Accordingly, the Committee Reports were consistent in their treatment of the non-dischargeability of debts owed

to third parties and there is no need to refer to the contradictory statements in the Joint Statement.

A second flaw in the *Calhoun* Court's analysis is that the Court conflates the debtor's obligation to pay the marital debt that is owed to third party creditors and the debtor's duty to hold his former spouse harmless on that debt. At one point in its analysis, the *Calhoun* Court observes that there is an analytical distinction between the debtor's obligation to third party creditors when he assumes joint debts and his obligation to hold his former spouse harmless on those debts. *Id.* at 1106 n. 4. In fact, the Court noted that the determination of the dischargeability of the liability to third party creditors on the underlying joint debt requires "an analysis distinct from consideration of whether the continuing obligation to hold harmless may be discharged" and that only the latter was at issue. *Id.* at 1109 n. 9 However, the Court also examined whether the assumption of the joint debt was within the scope of § 523(a)(5). *Id.* at 1109.

Thus, although the *Calhoun* Court identified the analytical distinction between a debtor's obligation to pay the joint debt to third party creditors and his obligation to hold his former spouse harmless concerning those debts, its analysis ultimately conflates the two obligations. Accordingly, the *Calhoun* Court's analysis of whether the exception contained in § 523(a)(5) is broad enough to include the debtor's assumption of the underlying joint debt is confusing, inconsistent with the relevant legislative history of § 523(a)(5) and ultimately unpersuasive and the Court will not follow its holding.

The Court's determination that the scope of § 523(a)(5) does not include a debtor's obligation on the underlying debt is also bolstered by two policy considerations. First, not allowing the debtor to

discharge his obligation to third party creditors on the underlying joint debt could significantly compromise his ability to provide support or maintenance directly to his former spouse or children. Jana B. Singer, *Divorce Obligations & Bankruptcy Discharge: Rethinking the Support/Property Distinction*, 30 HARV. J. ON LEG. 43, 111–12 (1993). Second, excepting the debtor's obligation on commercial unsecured debt to the third party creditors from discharge has the effect of granting those creditors a privileged status vis-a-vis other unsecured creditors. *Id.*

These considerations are particularly compelling when, as is the case here, excepting Debtor's obligation to the third party creditors from discharge will have no effect upon Plaintiff's liability to those creditors. Rather, Plaintiff's protection from liability to the third party creditors comes from Debtor's obligation to hold her harmless from such liability, which is excepted from discharge. Thus, both the salutary objectives underlying § 523(a)(5) of protecting a debtor's former spouse as well maintaining the overall distribution scheme established by the Code are served by construing the scope of § 523(a)(5) to include the debtor's hold harmless obligation but not the underlying obligation on the marital debt to the third party creditors. *See* Sheryl L. Scheible, *Defining "Support" Under Bankruptcy Law: Revitalization of the "Necessaries" Doctrine*, 41 VAND. L. REV. 1, 43 (1988).

In conclusion, although certain debts in the nature of support or maintenance owed to third parties are within the scope of § 523(a)(5), both the language and the relevant statutory history of § 523(a)(5) clearly indicate that not all debts in the nature of support or maintenance owed to third parties are within the ambit of the statute. Also, the Committee Reports indicate that the scope of § 523(a)(5) includes the debtor's obligation on the hold harmless obligation to the former spouse but does not include the debtor's obligation to the third party creditors on the underlying joint debt. Further, the policy considerations underlying § 523(a)(5) as well as the overall distribution scheme of the Code favor an interpretation of the scope of § 523(a)(5) that includes a debtor's obligation under a hold harmless agreement but not his obligation on the underlying debt to the third party creditors. Accordingly, the Court holds that Debtor's obligation to the third party creditors on the underlying Marital Debt is not a debt "to a spouse, former spouse or child of the debtor" under § 523(a)(5).[1] Therefore, Debtor's obligation to the third party creditors on the Marital Debt contained in the Amended Decree is not excepted from discharge under § 523(a)(5).

**2. The Assumption of Marital Debt is not Excepted from Discharge Under § 523(a)(15).**

Plaintiff also argues that Debtor's assumption of the marital debt in the Amended Decree is excepted from discharge under § 523(a)(15). Section 523(a)(15) excepts from discharge any debt:

> "not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, decree or other order of a court of record, a determination made in accordance

---

**1.** The Court expresses no opinion as to the exact location of the proverbial line between the dischargeability of debts owed to third parties that are within the purview of § 523(a)(5) and those that are outside the scope of the statute. The Court notes that the Seventh Circuit has addressed this issue in *DeKalb County Div. of Family Serv. v. Platter (In re Platter)*, 140 F.3d 676, 682–83 (7th Cir.1998).

with State or territorial law by a governmental unit unless—

> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
>
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor."

█ The Plaintiff has the burden of proof in establishing that the debt at issue is one that arises in the course of a divorce or in connection with a separation agreement and decree. *Fellner v. Fellner (In re Fellner)*, 256 B.R. 898, 902 (8th Cir. BAP 2001). Once the plaintiff has met her burden of proof, the burden then shifts to the debtor to establish that the defense in either §§ 523(a)(15)(A) or (B) is applicable. *Id.* at 902–03. If the debtor establishes that either defense is applicable, the debt is not excepted from discharge under § 523(a)(15). *Id.* at 903.

█ Plaintiff has failed to meet her burden of proof in establishing that Debtor's obligation on the Marital Debt owed to the third party creditors is one that arose in the course of a divorce or separation. A debt that existed prior to the divorce or separation is not a debt that arose in the course of a divorce for purposes of § 523(a)(15). *Burton v. Burton (In re Burton)*, 242 B.R. 674, 678 (Bankr.

W.D.Mo.1999); *Stegall v. Stegall (In re Stegall)*, 188 B.R. 597, 598 (Bankr.W.D.Mo. 1995).

Here, because Debtor's obligation to the third party creditors on the Marital Debt preexisted the State Court's entry of the Amended Decree, it is not within the scope of § 523(a)(15). Accordingly, Debtor's obligation on the Marital Debt to the third party creditors in the Amended Decree is not excepted from discharge under § 523(a)(15).

*D. Debtor's Underlying Debt to GTE Mobile is not excepted from Discharge Under § 523(a)(2)(A).*

█ Plaintiff next argues that Debtor's direct obligation to GTE Mobile is excepted from discharge under § 523(a)(2)(A) because Debtor improperly used her social security number in an application he submitted to GTE Mobil.[2] Because Plaintiff failed to prove that GTE Mobil justifiably relied on the alleged misrepresentation, the debt to GTE Mobile is not excepted from discharge under § 523(a)(2)(A).

Section 523(a)(5) excepts from discharge a debt for "money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." The Supreme Court has held that the discharge exception of § 523(a)(2)(A) only applies when the creditor justifiably relied upon the misrepresentation in extending the money, property or credit to the debtor. *Field v. Mans*, 516 U.S. 59, 76, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995).

Here, Plaintiff failed to produce any evidence that GTE Mobil justifiably relied upon Debtor's purported improper use of

---

**2.** The Court notes that Plaintiff is not seeking in her complaint to except from discharge any damages she may have incurred because of Defendant's improper use of her social security number.

Plaintiff's social security number. Accordingly, Plaintiff has failed to meet her burden of proof in demonstrating Debtor's obligation to GTE Mobile is excepted from discharge under § 523(a)(2)(A).

*E. Plaintiff's Attorney's Fee*

Plaintiff's final contention is that the she is entitled to her attorney's fees and costs that she has incurred in prosecuting this adversary complaint under § 11 U.S.C. § 523(d). Section 523(d) is only available to a debtor who prevails on a creditor's claim that consumer debt is excepted from discharge under § 523(a)(2). Obviously, because Plaintiff is not a debtor who prevailed on a claim that consumer debt is excepted from discharge under § 523(a)(2), she is not entitled to her attorney's fees under § 523(d). *See FCC Nat'l Bank v. Dobbins*, 151 B.R. 509, 511 (W.D.Mo.1992). Thus, Plaintiff's request for her attorney's fee is denied.

## CONCLUSION

Debtor's obligation to Plaintiff to hold her harmless with respect to the Marital Debt as outlined in the Amended Decree is excepted from discharge under § 523(a)(5)(B). Debtor's obligation on the underlying Marital Debt to the third party creditors is not excepted from discharge under either §§ 523(a)(5)(B) or 523(a)(15). Further, Debtor's direct obligation to GTE Mobil is not excepted from discharge under § 523(a)(2)(A). Finally, Plaintiff is not entitled to her attorney's fees.